UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JEFFERY DEAN HERSEY EL BEY,<br><br>Plaintiff,<br><br>v.<br><br>J. RUSSEL, et al.,<br><br>Defendants. | Case No. 23-cv-00107-LB<br><br>**ORDER SCREENING AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: ECF No. 7 |

**INTRODUCTION**

The plaintiff, who represents himself and is proceeding in forma pauperis, sued his arresting officer, the chief of police and mayor of Menlo Park, and state officials, claiming wrongful arrest on November 15, 2022, excessive force, and improper detention, in violation of 42 U.S.C. § 1983 and the Fourth Amendment to the U.S. Constitution. Before authorizing the United States Marshal to serve the defendants with the complaint, the court must screen it for minimal legal viability. 28 U.S.C. § 1915(e)(2)(B). The court issues this screening order to identify the complaint's deficiencies: among other issues, the plaintiff describes a lawful traffic stop, and he names parties (the police chief, the mayor, and state officials) who are not responsible because they were not involved. The plaintiff may file an amended complaint by August 1, 2023. If he does not, the court may recommend dismissal of the complaint.

# STATEMENT

On November 15, 2022, at approximately 11:00 a.m., a Menlo Park police officer stopped the plaintiff at Willow Road and Highway 101 in Menlo Park. The plaintiff says the following about what happened:

> My automobile were run off the road by flashing blue lights. A person with a weapon approached the driver's door and asked, "What is your name?" I replied, "I don't have a name." The person asked, "Do you have Driver License?" I said, "Know, I don't." My vehicle door was open by this person with his hand on his weapon demanded I get out. Fearing for my life; I asked, "What is going on; why my travel is being interrupted?" The person stated, "I'm placing you under arrest for interfering with my investigation." I asked the person to callout for his Supervisor. I were handcuffed, placed into a vehicle and transported to the Menlo Park Police Department and booked into the jail. 1. I have not harmed anyone. 2. I have not damaged anyone[']s property. 3. I have not violated the constitution. The Label of the shirt said Officer J. Russel but he never provided my with a copy of his Del[e]gation of Authority to do business at Morocco attached to his bond. I am still waiting for the signed affidavit of truth from the accused claiming I harm someone, something or in dishonor. Corporation Policies on commercial paper enforced from the Governor down to the patrolman on highways and road implying that natural living people can be citizen. Nevertheless, The right to Travel and Park cannot be surrendered[.] [T]hey are Inalienable/Inalienable Rights. Therefore, jurisdiction must be provable by the . . . .[1]

An earlier version of the complaint said this about the incident:

> Automobile Towed for not have commercial Plates. I was arrested for not contracting with policy enforcer by providing Driven License, Proof of Insurance and Registration. I was forced to pay a debt with promis[so]ry notes from hard labor before my automobile would be returned. I had to pay Menlo Park Police Department and the Tow Company ransom before I was able to retrieve my Automobile.[2]

In both complaints, the plaintiff complains about swollen wrists.[3] In the second complaint, he states that booking staff refused to take pictures of his injuries (although it may be that he was

---

[1] Am. Compl. – ECF No. 7 at 4. The ellipses denote where the paragraph ends. The last line did not make it into the pdf of the filed complaint. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Compl. – ECF No. 1 at 4.

[3] *Id.* at 5; Am. Compl. – ECF No. 7 at 5.

ORDER – No. 23-cv-00107-LB                    2

seen by a nurse, who took pictures).[4] He spent an entire day in custody in a "small" cell, "where [he] had to sit on the toilet in front of other men or suffer holding [his] [waste]."[5] In both complaints, he asks for $2,000 for each day that the police department keeps his private license plates.[6]

The defendants are the arresting officer J. Russel, the chief of police David Norris, Governor Gavin Newsom, Menlo Park mayor Jen Wolosin, and Avital Barnes and Giles Giovinazzi, Deputy Security and Senior Advisor, in Sacramento.[7] The last two presumably are on the Governor's staff.

## STANDARD OF REVIEW

A complaint filed by a person proceeding in forma pauperis under 28 U.S.C. § 1915(a) is subject to a mandatory, sua sponte review and dismissal by the court if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc). Under § 1915(e)(2), a court reviewing an in forma pauperis complaint must rule on its own motion to dismiss before directing the United States Marshals to serve the complaint under Federal Rule of Civil Procedure 4(c)(2). *Lopez*, 203 F.3d at 1126–27. "The language of § 1915(e)(2)(B)(ii) parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). The statute "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

"Frivolousness" under § 1915(e) and failure to state a claim under Rule 12(b)(6) are distinct concepts.

---

[4] Am. Compl. – ECF No. 7 at 5.
[5] Compl. – ECF No. 1 at 5; Am. Compl. – ECF No. 7 at 5.
[6] Compl. – ECF No. 1 at 5; Am. Compl. – ECF No. 7 at 5.
[7] Am. Compl. – ECF No. 7 at 2–3.

"A complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). The definition of frivolousness "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325. When determining whether to dismiss a complaint as "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), the court has "the unusual power to pierce the veil of the complaint's factual allegations," meaning that the court "is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton*, 504 U.S. at 32. Frivolous claims include "claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id.* "An in forma pauperis complaint may not be dismissed . . . simply because the court finds the plaintiff's allegations unlikely." *Id.* at 33. But "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* Frivolous litigation "is not limited to cases in which a legal claim is entirely without merit. . . . [A] person with a measured legitimate claim may cross the line into frivolous litigation by asserting facts that are grossly exaggerated or totally false." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1060–61 (9th Cir. 2007).

Under Rule 12(b)(6) and § 1915(e)(2)(B), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Rule 8(a)(2) requires that a complaint include a "short and plain statement" showing the plaintiff is entitled to relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain "detailed factual allegations," but the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions"; a mere "formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555 (cleaned up).

In determining whether to dismiss a complaint under Rule 12(b)(6), the court is ordinarily limited to the face of the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Factual allegations in the complaint must be taken as true and reasonable

inferences drawn from them must be construed in favor of the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court cannot assume, however, that "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Federal courts must construe pro se complaints liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). A pro se plaintiff need only provide defendants with fair notice of his claims and the grounds upon which they rest. *Hearns*, 413 F.3d at 1043. He need not plead specific legal theories so long as sufficient factual averments show that he may be entitled to some relief. *Id.* at 1041.

When dismissing a case for failure to state a claim, the Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130 (cleaned up).

## ANALYSIS

Liberally construing his complaint, the plaintiff claims the following: (1) wrongful arrest for a traffic violation, in violation of the Fourth Amendment; (2) excessive force in the form of tight handcuffs resulting in injury, in violation of the Fourth Amendment; (3) an unconstitutional confinement for an entire day, in violation of the Fourth and Fourteenth Amendments; and (4) supervisory liability by the police chief and possibly the Mayor and state officials, under a *Monell* theory of liability. There are several deficiencies with the complaint: (1) some of the defendants are not responsible for what happened because they were not involved, and (2) the plaintiff needs to describe more particularly what happened to him to establish claims of wrongful arrest, excessive force, an overlong detention, and unlawful conditions of confinement.

#### 1. Defendants Other Than the Arresting Officer

There are no allegations about anyone's personal involvement in the arrest except for the allegations against the arresting officer. The plaintiff thus states no claims against them. The plaintiff presumably names them (including the chief of police and the mayor) on a theory of supervisory liability. Preliminarily, there is no supervisory or *Monell* liability if there is not an underlying constitutional violation. As described below, the plaintiff needs to say more on his underlying claims. But even if he did allege claims, there is no supervisory liability with these allegations.

First, "[a] defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (cleaned up). There is no allegation about personal participation by the chief, the mayor, or anyone other than the arresting officer.

Second, local governments can be sued under § 1983 if the public entity maintains a custom, practice, or policy that amounts to deliberate indifference to a plaintiff's constitutional rights, and the policy results in a violation of a plaintiff's constitutional rights. *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978). There are three ways to show a policy or custom:

> (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (cleaned up). The practice or custom must be more than "random acts or isolated events" and instead must be a "permanent and well-settled practice." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1989) (cleaned up), *overruled on other grounds by Bull v. City and Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010). Thus, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an

existing, unconstitutional municipal policy." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). The plaintiff does not allege any facts suggesting a *Monell* claim.

### 2. Wrongful Arrest

Liberally construing his complaint, the plaintiff claims that there was no probable cause to arrest him. The plaintiff does not plausibly plead a claim because he alleges a lawful traffic stop based on his failure to have license plates and a subsequent lawful arrest for failing to provide his driver's license.

A police officer may conduct a brief investigatory stop of a person if the officer has a reasonable suspicion supported by articulable facts that "criminal activity may be afoot," even if the officer lacks probable cause. *Terry v. Ohio*, 392 U.S. 1, 21, 30 (1968). "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective reasonable inferences, form a basis for particularized suspicion." *United States v. Montero–Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000); *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012). Probable cause to conduct a warrantless arrest exists when the police have, at the moment of the arrest, "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause is a "practical, nontechnical conception" based on a "common-sense conclusion about human behavior," and it is a "fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 231–32 (1983) (cleaned up). Its existence is determined under the totality of the circumstances. *Id.* at 238; *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

The probable cause determination has two steps. First, the court considers the historical facts, meaning the events that occurred leading up to the arrest. *Ornelas v. United States*, 517 U.S. 690,

696 (1996). Second, the court considers whether these facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Id.*; *Devenpeck*, 543 U.S. at 153 (the objective standard means that the arresting officer's subjective intentions are irrelevant to the existence of probable cause). The "evidence supporting probable cause need not be admissible in court, [but] it must be legally sufficient and reliable." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 825 (9th Cir. 2013) (cleaned up).

Here, the plaintiff alleges that he was driving with private plates and, when the police officer stopped him, he refused to provide his driver's license. Failing to provide a driver's license to a police officer when driving is a misdemeanor (although it can be charged as an infraction at the prosecutor's discretion). Cal. Veh. Code § 12951(b); Cal. Veh. Code Violations Table for Cal. Veh. Code § 12951(b). It is an infraction to drive without license plates. Cal. Veh. Code § 5200; Cal. Veh. Code Violations Table for Cal. Veh. Code § 5200. At least on these facts, the plaintiff has not plausibly pleaded a claim: the stop was lawful and supported by probable cause because the plaintiff did not have proper license plates. Then, the officer had probable cause to arrest him for the misdemeanor offense of not providing a driver's license. *Demarest v. City of Vallejo*, 44 F.4th 1209, 1224 (9th Cir. 2022). If the plaintiff can allege facts that are different than these, possibly he can state a claim for wrongful arrest.

3. **Excessive Force**

The next issue is whether the plaintiff has plausibly pleaded a claim of excessive force.

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. O'Connor*, 490 U.S. 386, 396 (1989) (cleaned up). A court must evaluate "the facts and circumstances of each particular case, including [(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The *Graham* factors are not exhaustive. *George v. Morris*, 736 F.3d 829, 837–38 (9th Cir. 2013).

Because "there are no per se rules in the Fourth Amendment excessive force context," *Mattos*, 661 F.3d at 441, courts must "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (cleaned up). Other factors relevant to the analysis include the availability of less intrusive alternatives to the force used and giving proper warnings before using force, if feasible. *Glenn v. Washington Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (cleaned up). This is because "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Overly tight handcuffs sometimes can establish a Fourth Amendment violation, and sometimes they do not. *See Wall v. Cnty. of Orange*, 364 F.3d 1107, 1109–10, 1112 (9th Cir. 2004); *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 952, 960 (9th Cir. 2000); *Stevenson v. Jones*, 254 F.Supp.3d 1080, 1085, 1091–92 (N.D. Cal. 2017). Usually, viable claims involve extremely tight cuffs and resulting injury. *Wall*, 364 F.3d at 1110, 1112. The plaintiff needs to describe more specifically what happened when he was handcuffed.

**4. Detention**

An arrestee or detainee may have a due process right to be released within a reasonable time after the reason for his detention has ended. *Brass v. Cnty. of Los Angeles*, 328 F.3d 1192, 1200–01 (9th Cir. 2003). The Fourth and Fourteenth Amendments permit a "reasonable postponement" of a prisoner's release "while the County copes with the everyday problem of processing the release of the large number of prisoners who pass through its incarceration system." *Id.* at 1202 (cleaned up); *see id.* at 1200–01 (no due-process violation where county's thirty-nine-hour delay in releasing prisoner was justified and reasonable in light of its administrative responsibilities

processing large numbers of prisoner releases); *Baker v. McCollan*, 443 U.S. 137, 144–46 (1979) (no due-process violation where the plaintiff was mistakenly arrested and then imprisoned for seventy-two hours). *But cf. Berry v. Baca*, 379 F.3d 764, 771–73 (9th Cir. 2004) (declining to determine a number of hours that is presumptively reasonable for post-release over-detentions in case involving twenty-six to twenty-nine hours of over-detention).

The plaintiff must say more about what happened, including how long he remained in custody, for the court to evaluate the claim.

## CONCLUSION

The plaintiff may amend his complaint by August 1, 2023, to describe more fully what happened and the basis for his claim for relief. Alternatively, again by August 1, 2023, the plaintiff may voluntarily dismiss the case by filing a one-page notice of voluntary dismissal, which will operate as a dismissal without prejudice. If the plaintiff does neither, the court will reassign the case to a district judge and recommend that the newly assigned judge dismiss the case.

**IT IS SO ORDERED.**

Dated: July 3, 2023

LAUREL BEELER
United States Magistrate Judge